## Witman *v.* Levan, Appellant.

*Partnership—Assumpsit for work done—Evidence of partnership.*

In an action for work done, against two persons alleged to be partners, where it appears that the work was ordered by one of the defendants who was not served, the evidence is sufficient to establish a partnership between the two defendants and to support a judgment on a verdict against the one served, where the evidence tends to show that the latter was the owner of a device, that he sold a one-third interest to the other defendant, that the device was to be erected and operated for the joint interest of the owners, and presumptively that the distribution of the profits was to be in proportion to the interest of the owners in the business.

Argued Nov. 9, 1915. Appeal, No. 275, Oct. T., 1915, by defendant, from judgment of C. P. Berks Co., Oct. T., 1913, No. 7, on verdict for plaintiff in case of John J. Witman, trading and doing business as the Reading Electric Company v. George K. Levan and Thomas Mc-Feely Surviving Partners of the firm of George K. Levan, Charles McFeely and Thomas McFeely, lately trading and doing business as the Circle Whirl Company; Thomas McFeely. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for work done. Before WAGNER, J.

At the trial the jury returned a verdict for plaintiff for $432.39. On a rule for a new trial and judgment for defendant n. o. v. WAGNER, J., filed the following opinion:

Suit was brought by the plaintiff against the defendants, trading as the Circle Whirl Company, for the re-

covery of $356.12, with interest due thereon, which was claimed by the plaintiff for materials furnished and work done in the setting up of a Circle Whirl Device at Carsonia Park. There was no question that the material had been furnished and the work performed to the amount claimed by the plaintiff. The only question was whether Thomas McFeely was one of the partners of the Circle Whirl Company.

The plaintiff, to substantiate his claim that Thomas McFeely was one of the partners, offered in evidence an agreement entered into on May 4, 1911, between Thomas McFeely, of Philadelphia, Pa., and George K. Levan, of Reading Pa. It was admitted by Thomas McFeely that he had executed this agreement. It provides, first, for the sale by Thomas McFeely to George K. Levan of a one-third interest in what is known as the Double Whirl Amusement Device for the sum of $1,667. It then provides that George K. Levan is to be the treasurer and take the entire management of the said double whirl, which is to be located in Carsonia Park, Reading, Pa., and operate under a lease to be granted to Charles H. McFeely and George K. Levan. The subsequent evidence clearly shows that the lease here referred to is not a lease of the Double Whirl Amusement Device, but is a lease by Charles H. McFeely and George K. Levan for ground in Carsonia Park, where this device was to be operated. Neither was it, at any time during the trial or at the argument, contended that the lease referred to was other than the lease for the ground, which is part of the evidence in the case. The agreement further state that George K. Levan is to have the sum of $18.00 per week as salary, and is to take charge of the receipts and deposit same in bank or trust company as treasurer for Thomas McFeely until such time as the $1,667 is paid to Thomas McFeely by George K. Levan. Clause 4 gives to George K. Levan a 60-day option to purchase an additional one-sixth interest for $833 1-3; provides that the said double whirl is to be transported to Read-

ing, erected in the park, and the entire receipts for same set aside for the payment of this transportation and erection until same is paid in full, except the necessary operation expenses, and that George K. Levan and Charles H. McFeely are to draw $7.50 per week on their respective salaries during this period.   Clause 5 states: "It is also understood and agreed that the said George K. Levan, after the transporting and erecting expenses are paid, and the operating expenses and full purchase-price of the machine paid, is to have  a one-third interest in the net earnings or the one-half interest should he purchase the additional sixth interest under the option given herein; the rental or payments to the park for lease to be considered a part of the operating expenses." This is signed by Thomas McFeely and George K. Levan.

It will be seen that this agreement constitutes a sale by Thomas McFeely to George K. Levan of a one-third interest in this amusement device, together with a 60-day option to purchase an additional one-sixth interest; that it makes provision for the erection of this amusement device at Carsonia Park, Reading; that the management, whilst there is to be under George K. Levan, who is to receive a salary of $18.00 per week.   It provides also for the distribution of the entire receipts of the Circle Whirl Company at Carsonia Park.   The transportation and erection expenses, salaries, operating expenses, and rentals, are to be paid thereout.   Then of the net proceeds George K. Levan is to receive one-third, if he has a one-third interest, or one-half if he has a one-half interest.   These two persons dealt with each other in this agreement not with reference to merely a part interest in this device, but with the entire interest.   Presumptively the balance of the net earnings were to go to the other party to the agreement, that is, Thomas McFeely.   The latter part of this agreement is a partnership arrangement between Thomas McFeely and George K. Levan for the setting up and running of this device at Carsonia Park.

That Thomas McFeely at the time when he assumed in his individual capacity to make provisions for the full control and running of this machine was its full owner, is still further shown by the course of dealing between Levan and McFeely. Levan (N. of T., p. 9a) says that Thomas McFeely told him to go ahead and have the machine erected. Also (p. 12a), when asked: "What was the connection of Mr. Thomas McFeely with the Circle Whirl Company?" he answered: "Well, he was practically the owner." Again, when asked whether he had purchased from Mr. McFeely, the defendant, all the interest that he had in the machine on the fourth of May, 1911, (p. 13a), he answered: "No, sir; not to my knowledge"; that all that he purchased was a one-third. On pages 21a-22a this witness stated that as far as he understood it, the other two-thirds' interest belonged to Mr. Thomas McFeely, and that he had not considered that Charles McFeely was the owner of any portion of that machine. On page 22a, he says that the occasion of his conference with Mr. Thomas McFeely was to "take up the details of moving the machine up here and erecting it." When questioned (p. 23a) as to whether any one at that conference stated that Charles McFeely owned a three-quarters' interest, whilst at first he answered: "I really can't remember that"; that he didn't remember, he further answered: "No, sir; I don't know as it was said there."

The defense was that Thomas McFeely was not a partner. Thomas McFeely testified that although he sold the one-third interest to Levan on May 4, 1911, and agreed to a further sale of a one-sixth interest, yet on that date he was the owner of but a one-fourth interest; that when he sold a one-third interest to Levan he disposed of his entire interest that he had in this device. He claimed that as to the other part, he acted as attorney for Charles McFeely. The agreement, however, is not signed as attorney, but in his individual capacity. Whilst he on several occasions stated that he had acted

in these matters as attorney for his son Charles Mc-
Feely, yet there is no evidence whatever of any power of
attorney to show that he was so authorized to act.    He
does not deny that he originally owned this entire device,
but testified that sometime in 1908 he sold a three-
fourths' interest in it to his son  Charles.    His son
Charles, when put on the stand and questioned as to
where he got his three-fourths' interest, does not say that
he purchased it from his father, but (N. of T., p. 43a)
that he and one Mr. Creighton, bought it at a sheriff's
sale.

The question as to whether Thomas McFeely was a
partner was submitted to the jury for them to deter-
mine from the evidence.    The verdict shows that they
found him to have been a partner.    This we consider
is the only finding warranted under the evidence.    Such
being the case, he was liable for the debts created by
this partnership: DeTemple v. Rohrbach, 52 Pa. Su-
perior Ct. 455.

Counsel for defendant in support of their rule for
judgment n. o. v. have planted their whole case upon
Denithorne v. Hook, 112 Pa. 240.    The case under con-
sideration and as presented to the jury, was whether
Thomas McFeely was in fact a partner.    In Denithorne
v. Hook, the person attempted to be charged was prac-
tically conceded not to be a partner, but was attempted
to be held upon the ground that he had been held out as
a partner.    Under those facts the court held: "First,
the alleged act of holding out must have been done either
by him or by his consent.    Second, it must have been
known to the person seeking to avail himself of it."
That case, however, has no application to this, where
plaintiff claims that Thomas McFeely is liable not upon
the ground that he held himself out as a partner, whilst
he in fact was no partner, but upon the ground that he
was a partner even though a dormant one.

Rules for new trial and for judgment n. o. v. are dis-
charged.

262, (1916).] Assignment of Error—Opinion of the Court.

*Error assigned* was in refusing to enter judgment for defendant n. o. v.

*Charles H. Tyson,* with him *Sherman H. Hoverter* and *H. Merian Allen,* for appellant.—The common ownership of property does not of itself create the relation of partnership between the owners of property even though such owners use the common property for the purpose of gain: Hopkins v. Forsyth, 14 Pa. 34; Adams v. Carroll, 85 Pa. 209; Schaeffer v. Fowler, 111 Pa. 451; Gibb's Est., 157 Pa. 59; Neill v. Shamburg, 158 Pa. 263; Eshleman v. Harnish, 76 Pa. 97; Edwards v. Tracy, 62 Pa. 374; Walker v. Tupper, 152 Pa. 1; Denithorne v. Hook, 112 Pa. 240.

*H. Robert Mays,* with him *W. E. Sharman,* for appellee.—Proof of partnership was established: Thomas, to use, v. Moore, 71 Pa. 193; Reed, Crane & Co., v. Kremer & Co., 111 Pa. 482; Guyer v. Port, 155 Pa. 322; Morrison v. Curry, 43 Pa. Superior Ct. 648; Hill v. Voorhies, 22 Pa. 68; O'Brien v. Collins, 205 Pa. 651.

OPINION BY HENDERSON, J., March 1, 1916:

The only controverted question in this case was whether Thomas McFeely, the appellant, was a member of a firm engaged in operating a "Circle Whirl" in a park at the City of Reading. The clear and comprehensive review of the evidence by the learned trial judge on the rules for a new trial and for judgment non obstante veredicto, render it unnecessary to enter into a particular discussion of the testimony. It cannot be doubted that the plaintiff made out a prima facie case of liability. The contract entered into between the appellant and George K. Levan dated May 4, 1911, shows on its face that the appellant was the owner of a "double whirl amusement device"; that he contracted to sell a one-third interest therein to Levan; that Levan was made treasurer and manager of the business. The contract

provides for the expense of moving the machine to the park and its erection there, for a salary to Levan and for a distribution of all the proceeds of the business.   No other conclusion could be logically drawn from this agreement than that the appellant was the owner of the device; that he sold a one-third interest to Levan; that the device was to be erected and operated for the joint interest of the owners and presumptively that the distribution of the profits was to be in proportion to the interest of the owners in the business.   There was oral testimony also tending to show that Thomas McFeely was the owner of that part not sold to Levan and that he was interested in the prosecution of the business.   If no testimony had been offered by the defendant it could hardly be seriously contended that there was not evidence for the jury on the question of the partnership.   The appellant defended on the allegation that he was the owner of a one-fourth interest only; that he held the remainder as attorney in fact for his son, C. H. McFeely, who was to be a partner with Levan in the business, and C. H. McFeely corroborated his father's statements on that subject.   The evidence thus introduced was not of such a character as to convince the jury, and the verdict was for the plaintiff under a charge which presented the issue clearly and is free from reversible error.

The assignments of error are overruled and judgment affirmed.